UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT L. LOAEC 2014 TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROMONA A. DOHENY,<br><br>Defendant. | Case No. 19-cv-02078-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

Before the Court is defendant Romona A. Doheny's motion to dismiss. *See* Dkt. No. 15. In their complaint, Plaintiffs Gilbert L. Loaec 2014 Trust, Yvonne Loaec-Russ, and Gilbert L. Loaec accuse Doheny of taking advantage of Loaec's advanced age. *See* Dkt. No. 1 ("Compl."). Because Doheny already answered (*see* Dkt. No. 8), the Court converts her motion into a motion for judgment on the pleadings. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Doheny's motion.

**I. Background**

    **A. Factual Allegations in the Complaint[1]**

At the time the complaint was filed, Loaec was 90 years old and lived in Sunnyvale, California. Compl. ¶ 4. Loaec had been diagnosed with dementia and was no longer

---

[1] The factual allegations are assumed true for the purposes of this order.

competent to manage his own affairs. *Id.* Yvonne Loaec-Russ, Loaec's adopted daughter, is the current trustee of the Gilbert L. Loaec 2014 Trust ("Trust").[2] *Id.* ¶¶ 5, 6. She was also Loaec's attorney-in-fact. *Id.* ¶ 6.

In 1960, Loaec adopted Raymond, Doheny's biological brother. *Id.* ¶ 9. Loaec adopted Yvonne three years later. *Id.* ¶ 10. After Loaec revealed to Raymond and Yvonne that they were adopted, Raymond reconnected with Doheny. *Id.* ¶ 11.

In 2009, Loaec's wife was diagnosed with dementia and placed in a care facility, while Raymond was diagnosed with cancer. *Id.* ¶ 12. At this time, Doheny traveled to Sunnyvale from Connecticut to visit Raymond. *Id.* ¶ 13. During her visit, Doheny stayed with Loaec and allegedly manipulated him, taking advantage of Loaec's "fragile emotional state, advanced age and deteriorating health." *Id.* Doheny then conducted "a methodical telephone campaign" to gain Loaec's trust. *Id.* ¶ 14. She also began to fabricate stories to gain Loaec's sympathy in an attempt to cajole Loaec into sending her money. *Id.* ¶ 15. Between 2013 and 2018, Loaec gave Doheny approximately $1,400,000. *Id.* ¶¶ 16–17.

Loaec began showing signs of dementia in 2015, but, at Doheny's insistence, Loaec refused to be examined by a physician. *Id.* ¶ 18. Eventually, in 2018, Loaec was diagnosed with dementia after causing a car accident and trying to enter someone else's home. *Id.* ¶ 19. At this point, Yvonne began to attend Loaec's financial affairs and discovered Doheny's alleged fraud. *Id.* ¶ 20.

## B. Procedural History

On April 17, 2019, Plaintiffs filed their complaint, alleging (1) elder abuse under Cal. Welf. & Inst. Code § 15610.30; (2) fraud under Cal. Civ. Code § 1709; (3) undue influence under Cal. Welf. & Inst. Code § 15160.70; (4) conversion under Cal. Civ. Code § 1712; (5) receiving or concealing stolen property under Cal. Pen. Code § 496; and (6) disinheritance pursuant to Cal. Prob. Code § 259. *Id.* ¶¶ 21–30, 33–34. In addition to damages, Plaintiffs seek injunctive relief. *Id.* ¶¶ 31–32. Doheny answered the complaint

---

[2] The Court refers to Yvonne Loaec-Russ as "Yvonne" for the sake of brevity and clarity.

2

on May 6, 2019. *See* Dkt. No. 8. Notwithstanding her answer, however, Doheny filed the instant motion to dismiss on July 10, 2019. *See* Dkt. No. 15.

In response to an order to show cause, Plaintiffs notified the Court that Loaec passed away two months after Plaintiffs filed their complaint (*see* Dkt. No. 24) and that Loaec's estate entered probate (*see* Dkt. No. 28 at 3). The Court stayed the case pending the appointment of an executor for Loaec's estate. *See* Dkt. No. 30. On November 18, 2019, the parties reported that the Santa Clara County Superior Court appointed Yvonne as the executor of Loaec's estate. *See* Dkt. No. 33. The Court subsequently lifted the stay. *See* Dkt. No. 34.

All parties consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 7, 9.

## II. Legal Standard

As a threshold matter, Federal Rule of Civil Procedure 12(b) provides that motions to dismiss for failure to state a claim "must be made before pleading if a responsive pleading is allowed." *See also Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) ("A Rule 12(b)(6) motion must be made *before* the responsive pleading. Fed. R. Civ. P. 12(b)(6).") (emphasis in original). As recounted above, Doheny already filed her answer. *See* Dkt. No. 8. Thus, her motion to dismiss is technically improper.

Courts, however, may simply convert a motion to dismiss into a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) if it is filed after the moving party has already answered. *See Elvig*, 375 F.3d at 954 (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980)). Accordingly, the Court converts Doheny's motion to dismiss into a motion for judgment on the pleadings.

Motions for judgment on the pleadings apply the same legal standard as motions to dismiss for failure to state a claim. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing [and] the motions are functionally identical."). Thus, all material allegations in the complaint are taken as true, while allegations that in the complaint that contradict the plaintiffs' allegations are treated as false. *Elvig*, 375 F.3d

1 at 955. A court may grant a motion for judgment on the pleadings when the movant
2 clearly establishes that no material issues of fact remain to be resolved, and it is entitled to
3 judgment as a matter of law. *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482
4 (9th Cir. 1984). As with motions to dismiss, if a court grants a motion for judgment on the
5 pleadings, leave to amend should be granted unless "the Court is satisfied that an
6 amendment could not cure the deficiency." *Harris v. Cnty. of Orange*, 682 F.3d 1126,
7 1135 (9th Cir. 2012).

## III. Discussion

Doheny moves to dismiss largely on the back of her assertions that Plaintiffs' claims lack a "factual basis." *See* Dkt. No. 15. For the most part, Doheny's arguments simply challenge the accuracy of Plaintiffs' allegations. *See, e.g.*, *id.* at 17 ("Defendant never took money from Mr. Loaec other than what he was willing [to give] to her."). On a motion for judgment on the pleadings, however, the Court must accept all allegations in Plaintiffs' complaint as true. *See Elvig*, 375 F.3d at 955. With this standard in mind, the Court will address each claim for relief.

### A. Financial Abuse of an Elder

Under California law, a person or entity commits financial abuse of an elder when she "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both" or "by undue influence." Cal. Welf. & Inst. Code § 15610.30(a)(1), (3); *see also Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639, 656 (2016). An "elder" is "any person . . . 65 years of age or older." *Id.* § 15610.27. And "undue influence means excessive persuasion that causes another person to act . . . by overcoming that person's free will and results in inequity." *Id.* § 15610.70(a).

Plaintiffs allege that Loaec was over 65 years of age when the supposed fraud occurred. *See* Compl. ¶¶ 4, 13–17. Plaintiffs also allege that Doheny took advantage of Loaec's "fragile emotional state, advanced age and deteriorating health" by conducting "a methodical telephone campaign" to gain his trust. *Id.* ¶¶ 13–14. Doheny also allegedly

4

fabricated stories to coax Loaec into sending her money. *Id.* ¶ 15. Thus, Plaintiffs have adequately alleged that Doheny obtained property through fraud or by undue influence.

Doheny argues that § 15610.30(a)(1) does not apply because Loaec was not a dependent adult. Plaintiffs, however, allege that Loaec began showing signs of dementia in 2015 and was diagnosed with dementia by 2018. *See id.* ¶¶ 18–19. The Court must accept those allegations as true on a motion for judgment on the pleadings. *Elvig*, 375 F.3d at 955. In any case, financial abuse of an elder does not require that the victim be a dependent adult. California defines financial abuse of an elder as wrongful taking of real or personal property belonging to "an elder *or* dependent adult." Cal. Welf. & Inst. Code § 15610.31(a)(1), (3) (emphasis added).

Doheny also argues that Loaec willingly gave her money. But whether Loaec gave Doheny money willingly or not is beside the point. Doheny committed financial abuse of an elder if Loaec's willingness to give was induced by fraud or undue influence. *See id.* Plaintiffs allege that it was. Accordingly, the Court DENIES Doheny's motion to dismiss Plaintiffs' financial abuse of an elder claim.

### B. Fraudulent Deceit

The elements of fraudulent deceit are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (citing 5 Witkin, Summary of Cal. Law Torts § 676 (9th ed. 1988)); *see also* Cal. Civ. Code § 1709.

Under Federal Rule of Civil Procedure 9(b), "the circumstances constituting fraud or mistake" must be alleged with particularity. Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). For schemes stretching over multiple years, however, Rule 9(b) does not require a plaintiff to "allege, in detail, all facts supporting each and every instance of [fraud] over a multi-year period." *United States ex rel. Insoon Lee v.*

*SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001). Nor does Rule 9(b) even require the plaintiff to identify representative examples to support every allegation. *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Rather, the plaintiff is simply required to allege particular details of the scheme "paired with reliable indicia that lead to a strong inference" of fraud. *Id.* (quoting *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

Here, Plaintiffs alleged that Doheny falsely claimed "to be a helpless victim of lupus, breast cancer, broken hands and a brain aneurism . . . ." Compl. ¶ 15. Plaintiffs also allege that Doheny lied about being in a severe car accident, being a victim of bank fraud, and losing her home in Hurricane Irma. *Id.* Plaintiffs allege that Doheny used these false representations to coax Loaec into giving her money between 2013 and 2018. *Id.* ¶¶ 15–16. These allegations are sufficiently specific to satisfy Rule 9(b)'s particularity requirement. Accordingly, the Court DENIES Doheny's motion to dismiss Plaintiffs' claims for fraudulent deceit.

### C. Undue Influence

Doheny moves to dismiss Plaintiffs' claim for undue influence as defined under Cal. Civ. Code § 1575. *See* Dkt. No. 15 at 18. But Plaintiffs' claim for undue influence is based on Cal. Welf. & Inst. Code § 15610.70. *See* Compl. ¶¶ 25–26. Doheny's motion to dismiss therefore applies the wrong statute.

Nonetheless, Plaintiffs' claim for undue influence under Cal. Welf. & Inst. Code § 15610.70 appears duplicative of their first claim for financial abuse of an elder. Indeed, California law incorporates § 15610.70 as an alternative prong of liability for financial abuse of an elder. *See* Cal. Welf. & Inst. Code § 15610.30(a)(3) (A person or entity commits financial abuse of an elder by "[taking] . . . real or personal property of an elder or dependent adult by undue influence, *as defined in Section 15610.70*.) (emphasis added). It is not clear how Plaintiffs' undue influence claim under § 15610.70 differs from their financial abuse claim under § 15610.30.

Accordingly, the Court GRANTS Doheny's motion to dismiss Plaintiffs' undue

influence claim without leave to amend. Plaintiffs, however, may rely on a theory of undue influence to argue their financial abuse of an elder claim under § 15610.30.

**D. Conversion**

"To establish conversion, a plaintiff must show (1) his ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages." *Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 1329 (1988). "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." *McKell v. Wash. Mutual, Inc.*, 142 Cal. App. 4th 1457, 1491 (2006).

Plaintiffs have stated a claim for conversion. They alleged that Doheny took from Loaec over $1,200,000 in checks (Compl. ¶ 16) and $200,000 in the form of a loan that was never repaid (*id.* ¶ 17). Both sums are "amounts of cash 'capable of identification.'" *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 397 (2007) (quoting *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941)). Plaintiffs further alleged that Doheny obtained both sums through fraud or by undue influence. *Id.* ¶¶ 13–15.

Doheny argues that Plaintiffs failed to state a claim because there was no allegation that Loaec required Doheny to keep that money separate from her own funds. *See* Dkt. No. 15 at 20. But conversion is not limited to cases where the tortfeasor commingled funds. Although California courts have noted that conversion for money "*typically* involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others[,]" conversion of money is not limited to such cases. *PCO*, 150 Cal. App. 4th at 396 (emphasis added). Accordingly, the Court DENIES Doheny's motion to dismiss Plaintiffs' conversion claim.

**E. Receiving or Concealing Stolen Property**

Cal. Pen. Code § 496(a) prohibits "buy[ing] or receiv[ing] any property that has been stolen or that has been obtained in any manner constituting theft or extortion,

knowing the property to be so stolen or obtained," or concealing such property from the owner while knowing that the property was stolen. "Any person who has been injured by a violation of [§ 496] may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." Cal. Pen. Code § 496(c).

"Historically, a thief could not be convicted under section 496 of receiving the property he stole." *People v. Reyes*, 52 Cal. App. 4th 975, 986 (1997). But the California Legislature amended § 496 to allow "[a] principal in the actual theft of the property [to] be convicted of [§ 496]" with the caveat that "no person may be convicted both pursuant to this section and of the theft of the same property." *Id.* (quoting Cal. Pen. Code § 496(a)).

Following that amendment, some courts have interpreted § 496's bar against dual convictions of theft and receipt or concealment of stolen property as prohibiting or limiting dual civil liability. In *Grouse River Outfitters Ltd. v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 WL 5930273, at *13–15 (N.D. Cal. Oct. 12, 2016), the court held that some "extra conduct" beyond simply obtaining misbegotten property was required to be liable of both fraudulently obtained property and receiving that same property. *See also Agape Family Worship Ctr. Inc. v. Gridiron*, No. 15-cv-01465-ODW, 2018 WL 2540274, at *4–5 (C.D. Cal. May 30, 2018) (requiring an additional level of conduct for dual civil liability); *cf. Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 971 (2018) (declining to apply § 496 to theft of labor in part because labor could not have been stolen at the time it was obtained).

Other courts, however, have interpreted § 496 more broadly and declined to interpret the dual-conviction bar as prohibiting dual civil liability for both theft of property and receipt of the same property. In *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1049 (2013), the court permitted recovery for fraud and concealment of stolen property, noting that while they were "mindful of [the defendant's] policy concerns" about permitting dual civil liability, "it [was] the task of the Legislature to address those policy concerns."

More recently, in *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019), the California

8

Court of Appeal held that "[a]ll that is required for civil liability to attach under section 496(c), including entitlement to treble damages, is that a 'violation' of subdivision (a) or (b) of section 496 is found to have occurred." And "[a] violation may be found to have occurred if the person engaged in the conduct described in the statute." *Id.*; *see also Allure Labs, Inc. v. Markushevska*, No. 19-cv-00066-LHK, 2019 WL 3231012, at *7–11 (N.D. Cal. July 18, 2019). The court also rejected the defendant's argument that the Legislature could not have intended to extend § 496(c)'s treble damage remedy when traditional remedies for breach of contract, fraud or conversion were available, noting that enhanced civil remedies were not inherently unreasonable. *Id.* at 128–30.

The Court is persuaded by the approach taken in *Bell*, *Switzer*, and *Allure*. The dual-conviction bar in § 496(a) is plainly limited to dual *convictions*, while § 496(c) broadly allows civil liability for any violation of § 496. Accordingly, the Court DENIES Doheny's motion to dismiss Plaintiffs' claim for receipt or concealment of stolen property.

### F. Injunctive Relief

Doheny moves to dismiss of Plaintiffs' claim for injunctive relief. Although Doheny is correct that injunctive relief is a remedy, not a cause of action (*see Castellanos v. Countrywide Bank NA*, No. 15-cv-00896 BLF, 2015 U.S. Dist. LEXIS 85111, 2015 WL 3988862, at *4 (N.D. Cal. June 30, 2015)), the Court declines to dismiss Plaintiffs' claim for injunctive relief. Instead, the Court will construe Plaintiffs' "sixth cause of action" as prayer for relief in the form of an injunction rather than a cause of action.

### G. Disinheritance

Finally, Doheny moves to dismiss of Plaintiffs' claim for disinheritance pursuant to Cal. Prob. Code § 259 for lack of a "factual basis." *See* Dkt. No. 15 at 22. Because the Court must assume that Plaintiffs' factual allegations are true on a motion for judgment on the pleadings and Plaintiffs have successfully alleged financial abuse of Loaec, the Court declines to dismiss Plaintiffs' request for disinheritance for lack of a factual basis.

Nevertheless, the Court will dismiss Doheny's claim for disinheritance under the probate exception to federal jurisdiction. "[T]he probate exception reserves to state

probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006); *see also Gonclaves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1252 (9th Cir. 2017).

Under Cal. Prob. Code § 259, "[a]ny person shall be deemed to have predeceased a decedent" if she (1) is found liable for physical abuse, neglect, or financial abuse of the decedent, who was an elder or dependent adult; (2) acted in bad faith; (3) acted recklessly, oppressively, fraudulently, or maliciously towards the decedent; and (4) the decedent was substantially unable to manage his financial resources or to resist fraud or undue influence. This falls squarely within the probate exception. Plaintiffs' § 259 claim essentially asks the Court to effectively "annul a will" or "administer [the] decedent's estate," which it cannot do. *Goncalves*, 865 F.3d at 1252.

Accordingly, the Court GRANTS Doheny's motion to dismiss Plaintiffs' claim for disinheritance pursuant to Cal. Prob. Code § 259 without leave to amend.

## IV. Conclusion

The Court GRANTS Doheny's motion to dismiss Plaintiffs' third claim for undue influence under Cal. Welf. & Inst. Code § 15610.70 and seventh claim for disinheritance pursuant to Cal. Prob. Code § 259 without leave to amend. The Court otherwise DENIES Doheny's motion to dismiss.

**IT IS SO ORDERED.**

Dated: November 22, 2019 _____
NATHANAEL M. COUSINS
United States Magistrate Judge